**Michael PERKINS, Plaintiff,**

**v.**

**NEW YORK CITY DEPARTMENT OF CORRECTION, Warden of H.D.M. Correctional Facility, Catherine M. Abate, Commissioner of New York City Department of Correction Services, Defendants.**

**No. 93 Civ. 0205 (JES).**

United States District Court, S.D. New York.

June 7, 1995.

Michael Perkins, East Elmhurst, NY, pro se.

Paul A. Crotty, Corp. Counsel of the City of New York, New York City (Gabriel Taussig, Albert G. Fredericks, Diane Betlejeski, Asst. Corp. Counsel, of counsel), for defendants.

**MEMORANDUM OPINION AND ORDER**

SPRIZZO, District Judge.

Plaintiff Michael Perkins, acting *pro se*, brings the instant civil rights action against the New York City Department of Correction (the "NYC DOCS"), Andrew Phoenix,

the former Warden of the House of Detention for Men (the "HDM Center") and Catherine M. Abate, the former Commissioner of the Department of Correction Services (collectively "defendants"). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants move for summary judgment.

## BACKGROUND

At all times pertinent to this action, plaintiff Michael Perkins and Hugh Boyle were inmates at the Anna M. Kross Center (the "AMK Center") in Rikers Island, New York. Affidavit of Diane Betlejeski Sworn to August 12, 1994 ("Betlejeski Aff.") ¶ 9. On September 22, 1992, Perkins and Boyle were allegedly involved in an incident in the east mess hall at the AMK Center. Defendants' Statement Pursuant to Local Rule 3(g) ¶¶ 1–6; Betlejeski Aff. ¶ 9. On the day of the incident, Correction Officer McKenzie filed an infraction report against each inmate. Betlejeski Aff. ¶ 10, Exh. C.

At all times pertinent to this action, Captain Serge Jacques was responsible for supervising correction officers and investigating infraction reports at the AMK Center. Affidavit of Serge Jacques Sworn to August 11, 1994 ("Jacques Aff.") ¶ 1. As a supervising officer, Captain Jacques investigated the infraction reports filed by Officer McKenzie. Betlejeski Aff. ¶ 11; Jacques Aff. ¶¶ 3–5. As a result of his investigation, Captain Jacques filed an investigative report for each infraction report, ordered Officer McKenzie to file a Notice of Infraction against each inmate and recommended a disciplinary hearing for each inmate.[1] Betlejeski Aff. ¶¶ 11–12, Exh. C; Jacques Aff. ¶¶ 6–7.

Captain Jacques alleges that, on September 22, 1992, he personally served each inmate with a Notice of Infraction. Betlejeski Aff. ¶ 12, Exh. D; Jacques Aff. ¶ 10. Captain Jacques further alleges that Boyle and Perkins each refused to sign their notification. Betlejeski Aff. ¶ 12, Exh. D; Jacques Aff. ¶¶ 10–11. For his part, Perkins claims that he was served with a copy of a Notice of Infraction addressed to inmate Boyle. Defendants' Notice of Motion ("Deft.Mtn.") Exh. B, ¶ 8.

At all times pertinent to this action, Correction Officer Julian Middleton was responsible for processing infractions and escorting inmates to disciplinary hearings at the AMK Center. Affidavit of Julian Middleton Sworn to August 3, 1994 ("Middleton Aff.") ¶ 1. Officer Middleton alleges that, on September 24, 1992, he attempted to escort Perkins to his scheduled disciplinary hearing, but Perkins refused to attend. Betlejeski Aff. ¶ 13, Exh. C; Middleton Aff. ¶¶ 3–4. For his part, Perkins claims that Middleton refused to escort him to the hearing. Deft.Mtn.Exh. B, ¶¶ 10, 13.

In any event, on September 24, 1992, Captain Clarence Jenkins presided over a disciplinary in the absence of Perkins. Betlejeski Aff. ¶ 14, Exh. C. Following the hearing, Captain Jenkins issued a report and recommendation, which was approved by Deputy Warden Thomas Burke. *Id.* In the report and recommendation, Captain Jenkins found Perkins guilty and recommended his confinement to punitive segregation for eighty days. *Id.* That same day, Perkins was personally served with a Notice to Inmate of Disciplinary Proceeding Disposition. Betlejeski Aff. ¶ 15, Exh. E; Deft.Mtn.Exh. B, ¶ 14. However, Perkins refused to sign his notification. Betlejeski Aff. ¶ 15, Exh. E; Deft.Mtn.Exh. B, ¶ 14.

On September 25, 1992, Perkins was confined to the punitive segregation unit. Betlejeski Aff. ¶ 17, Exh. F. On October 21, 1992, however, Perkins sought an annulment of his punitive segregation sentence by the writ court located at the Rikers Island Judicial Center. *Id.* at ¶ 17. The NYC DOCS did not file an objection. *Id.* at ¶¶ 17–18. That same day, the writ court vacated the punitive segregation sentence. *Id.* at ¶ 17, Exh. G.

On January 14, 1993, Perkins commenced the instant action against the NYC DOCS,

---

1. While the investigative report concerning Boyle is dated September 22, 1992, the report concerning Perkins is dated September 23, 1992. Based upon the institutional rules and his customary practice, however, Captain Jacques believes that both investigative reports were completed on September 22, 1992. Jacques Aff. ¶¶ 8–9.

Andrew Phoenix, the former Warden of the HDM Center, and Catherine M. Abate, the former Commissioner of the NYC DOCS. In his complaint, which the Court must construe liberally and deferentially, *see Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir.1995) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam)), Perkins claims that defendants violated his right to due process of law by failing to serve him with *his* Notice of Infraction, by conducting his disciplinary hearing in his absence and by confining him to punitive segregation.

## DISCUSSION

■ In his complaint, Perkins seeks to recover against the NYC DOCS.[2] A municipality may not be held liable for a civil rights violation based upon the theory of respondeat superior. *See Monell v. Department of Social Serv. of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). However, a municipality may be held liable for violations of civil rights caused by a "policy statement, ordinance, regulation, or decision of the municipality." *Id.* at 690, 98 S.Ct. at 2036. To that end, a plaintiff must plead and prove a municipal policy or custom which caused an alleged constitutional violation. *See Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir.1987); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983).

■ In this case, Perkins has failed to plead, let alone establish, any municipal policy or custom which caused a violation of his constitutional rights. In fact, the only reference to the NYC DOCS is in the caption of the complaint. Where, as here, there is no allegation or proof of a municipal policy or custom, the allegation of a single, isolated incident is generally insufficient to establish municipal liability. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) (plurality); *c.f. St. Louis v. Praprotnik*, 485 U.S. 112, 124–127, 108 S.Ct. 915, 924–26, 99 L.Ed.2d 107

(1988) (involving single decision by municipal policy maker); *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (plurality) (same).

■ In his complaint, Perkins also seeks to recover against Andrew Phoenix, the former Warden of the HDM Center and Catherine Abate, the former Commissioner of the Department of Correction Services. In order to recover against supervisory officials, such as former Commissioner Abate and former Warden Phoenix, a plaintiff must demonstrate personal involvement by each defendant. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). As summarized by the Second Circuit, a supervisory official may be personally involved by participating directly in the violation, by failing to remedy the violation, by creating a policy or custom which caused the violation or through grossly negligent management of subordinates who caused the violation. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

In view of these legal standards, Perkins has also failed to plead or establish any personal involvement by these individual defendants. As with the Department of Correction, the only reference to either former Commissioner Abate or former Warden Phoenix is in the caption of the complaint.

Moreover, former Warden Phoenix was responsible for the general operation of the HDM Center, now known as the James A. Thomas Center (the "JAT Center"), including the Central Punitive Segregation Unit which housed inmates confined to punitive segregation. Affidavit of Andrew Phoenix Sworn to August 4, 1994 ("Phoenix Aff.") ¶¶ 1, 3. However, former Warden Phoenix was not involved with disciplinary proceedings conducted at other facilities and was not responsible for the facility where the infraction occurred. Betlejeski Aff. ¶ 14, Exh. E; Phoenix Aff. ¶¶ 3–5, 7. Furthermore, while

2. A government agency or subdivision only possesses the powers conferred by legislative or executive grant. *See American Tel. & Tel. Co. v. New York City Dep't of Human Resources*, 736 F.Supp. 496, 498 (S.D.N.Y.1990) (holding that New York City Human Resources Administration lacks capacity to be sued). Thus, although defendants have not raised the issue, the NYC DOCS may lack the capacity to be sued. However, in view of the fact that leave to amend will be granted, this matter can be corrected in an amended complaint.

Perkins may have written the Warden of the AMK Center, where the infraction occurred, concerning the relevant events,[3] Deft. Mtn.Exh. B, ¶¶ 4–5, he did not contact the Warden of the HDM Center, Warden Phoenix. Phoenix Aff. ¶¶ 8–10.

## CONCLUSION

In this case, because Perkins is proceeding *pro se,* the Court will afford him an opportunity to file an amended complaint on or before July 31, 1995. If Perkins does file an amended complaint by that date, the parties shall appear for a Pre–Trial Conference on September 22, 1995 at 10:30 a.m. in Courtroom 705. If Perkins does not file an amended complaint by that date, the complaint will be dismissed with prejudice and the Clerk of the Court shall close the above-captioned action.

It is **SO ORDERED.**

---

3. Perkins cannot produce the alleged letter. Deft.Mtn.Exh. B, ¶ 4.